UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SAMANTHA R.,

               Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.
_____

20-CV-0440-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 19)

Plaintiff Samantha R.[1] ("plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion (Dkt. No. 12) is denied and defendant's motion (Dkt. No. 17) is granted.

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

## BACKGROUND[2]

On June 14, 2016, plaintiff protectively filed an application for DIB, alleging disability due to impairments of the thoracic, cervical, and lumbar spines, bilateral shoulder impairment, chronic pain syndrome, depression, and anxiety. (Tr. 128-34, 153-65)[3] Plaintiff's claim was denied at the initial level and after a hearing before an Administrative Law Judge ("ALJ"). (Tr. 12-32, 68-72, 81-82) The Appeals Council denied plaintiff's request for review on February 3, 2020, and the ALJ's determination became the final decision of the Commissioner. (Tr. 1-6) This action followed. (Dkt. No. 1)

## DISCUSSION

I.   *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*,

---

[2] The Court presumes the parties' familiarity with the case.

[3] References to "Tr." are to the administrative record in this case. (Dkt. No. 9)

312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II. *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's

regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to

the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III. *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of January 4, 2012, through her date last insured of March 31, 2016. (Tr. 17) At step two, the ALJ found that plaintiff had the severe impairments of myofascial pain syndrome, Vertebral subluxation complex, degenerative disc disease in the thoracic spine, major depressive disorder, and pain disorder. (Tr. 17) At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the Listings. (Tr. 18) Before proceeding to step four, the ALJ found that plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except she could occasionally interact with the public; engage in semi-skilled work; no overhead reaching with bilateral upper extremities; and pushing and pulling with bilateral upper extremities up to ten pounds. (Tr. 19) The ALJ then found at step four that plaintiff was unable to perform her past relevant work as an inventory clerk and chef. (Tr. 24) At step five, the ALJ found that considering plaintiff's age, education, work experience, and RFC, jobs existed in the national economy which plaintiff could perform. (Tr. 24-25) Accordingly, the ALJ found that plaintiff had not been under a disability within the meaning of the Act. (Tr. 25)

IV. *Plaintiff's Challenges*

Plaintiff seeks remand of the Commissioner's decision on the grounds that: (1) the ALJ erred in assessing plaintiff's credibility and the consistency of her complaints with the

medical evidence of record; (2) the ALJ's failure to consider plaintiff's need for medical treatment was reversible legal error because it violated Social Security Ruling ("SSR") 96-8p; and (3) the ALJ erred in evaluating the opinion evidence.[4] (Dkt. No. 12-1 at 21-29) For the following reasons, the Court disagrees that remand is required.

### A. Credibility Determination

Plaintiff first argues that the ALJ erred in assessing her credibility and the consistency of her complaints with the medical evidence of record. (Dkt. No. 12-1 at 21-24)

Although the Commissioner has eliminated the use of term "credibility" from the "sub-regulatory policy" because the regulations themselves do not use that term, see SSR 16-3p, an ALJ must still evaluate the intensity and persistence of a claimant's symptoms. In doing so, an ALJ should consider subjective complaints in light of "all of the available evidence," such as objective medical evidence and other evidence from medical and nonmedical sources. 20 C.F.R. § 404.1529(c). An ALJ should consider the relevant factors listed in 20 C.F.R. § 404.1529(c)(3). See SSR 16-3p, 2017 WL 5180304, at *7-8 (noting that relevant factors include daily activities; the location, duration, frequency, and intensity of pain; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication; type of treatment received; any measures other than treatment; and any other factors concerning an individual's functional limitations and restrictions).

In this case, the ALJ found that the intensity and persistence of plaintiff's subjective complaints were inconsistent with the overall record, relying on the objective evidence,

---

[4] Plaintiff's motion challenges the ALJ's findings only with respect to plaintiff's physical impairments.

7

plaintiff's positive response to conservative treatment, and plaintiff's varied daily activities. (Tr. 19-23)

Specifically, the ALJ evaluated plaintiff's subjective complaints alongside the objective medical evidence, noting that plaintiff's clinical findings pertaining to gait, range of motion, strength, and sensation were "largely normal." (Tr. 22; 260, 638-39, 643-44, 648-49, 850, 882, 887, 898-99 [documenting normal findings in gait, sensation, and strength]); see SSR 16-3p, 2017 WL 5180304, at *5 (noting that "objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms. . . . ."). Contrary to plaintiff's contention, see Dkt. No. 12-1 at 21-22, the ALJ did not exclusively rely on the normal examination findings and acknowledged plaintiff's deficits in certain areas. (Tr. 20 [noting "markedly restricted range of motion" in the spine], Tr. 22 ["profound" tenderness with restricted range of motion], Tr. 23 [giving great weight to an opinion referencing plaintiff's "very limited use of her dominant right arm"]). The ALJ also cited a functional capacity test which revealed that plaintiff could perform sedentary work, and this evaluation accommodated plaintiff's deficits in functioning, such as her reduced ability to perform postural activities and waist to shoulder lifts. (Tr. 22; 274-78) As such, the ALJ reviewed the objective medical evidence and reasonably limited plaintiff to sedentary work, which is the most restrictive work category, along with imposing additional limitations. See SSR 96-9p, 1996 WL 374185, at *3 (noting that sedentary work represents a "significantly restricted range of work").

In addition to evaluating objective evidence, the ALJ referenced other evidence, such as plaintiff's conservative treatment, daily activities, and positive response to

8

treatment. (Tr. 20-22) For example, the ALJ noted that plaintiff's treatment history was conservative and that she did not require surgery. (Tr. 20, 22; 210) *See* 20 C.F.R. § 404.1529(c)(3) (noting that treatment received is a relevant factor in assessing subjective symptoms). Although plaintiff suggests otherwise, *see* Dkt. No. 12-1 at 21-22, there is nothing in the record that supports her allegation that she was a surgical candidate. (Tr. 20-21; 636-75; 1141) The ALJ did not err in this regard. *See Penfield v. Colvin*, 563 Fed. Appx. 839, 840 (2d Cir. 2014) (finding that the ALJ's consideration of the conservative nature of claimant's treatment supported his analysis of the claimant's subjective complaints).

The ALJ also considered plaintiff's positive response to treatment. (Tr. 21-22 [noting decreased pain and spasms with medication, rest, change of position, chiropractic care, TENS unit, ice/heat; positive response to physical therapy.]) A review of the record reveals that plaintiff reported at multiple follow-up visits that her medication, massage therapy, trigger point injections, and other treatment improved, and sometimes even relieved, her pain and symptoms. (Tr. 641-42, 646, 651-52, 656, 661-62, 666, 671-72, 1066, 1072, 1077, 1082, 1092, 1097, 1107) The ALJ appropriately considered this evidence in applying the regulatory factors. *See Patterson v. Comm'r of Soc. Sec.*, No. 18-CV-698, 2019 WL 5419535, at *6 (W.D.N.Y. Oct. 23, 2019) ("[The claimant] acknowledged that conservative treatment—including medication, physical therapy, and massage therapy—helped improve her pain. The ALJ may consider that a claimant's medical condition improved with treatment.").

Finally, the ALJ found that plaintiff's daily activities were inconsistent with her subjective complaints. (Tr. 21-22) *See* 20 C.F.R. § 404.1529(c)(3) (noting daily activities

9

are relevant in assessing symptoms). As discussed by the ALJ, plaintiff reported the ability to perform light household chores, wash dishes, cook, wash laundry, walk her 45-pound dog in the park, and plan an out-of-state vacation. (Tr. 21-22; 789, 910, 913, 916) Such activities are consistent with plaintiff's ability to perform the demands of sedentary work as assessed by the ALJ. See, e.g., Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013) (finding that a claimant's ability to perform "daily tasks, such as walking her dogs and cleaning her house," were consistent with the ability to perform light work).

In sum, the ALJ cited to multiple factors in support of his determination, and properly evaluated the consistency of plaintiff's statements according to the regulatory factors. The ALJ's credibility determination is supported by substantial evidence.

### B. SSR 96-8p

Plaintiff' next contends that the ALJ's failure to consider plaintiff's need for medical treatment was reversible legal error because it violated SSR 96-8p. Specifically, plaintiff's need for frequent treatment would result in absenteeism and thus affect her ability to sustain employment. (Dkt. No. 12-1 at 24-26)

Social Security Ruling 96-8p provides that the RFC assessment must be based on all of the relevant evidence in the case record. The ruling lists the following as an example of such relevant evidence: "The effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication)." Id.

Plaintiff's avers that the ALJ should have found that plaintiff would be absent from work more than one day a month, based on her hearing testimony that she required

treatment three times per week during periods of symptom exacerbation. (Dkt. No. 12-1 at 24)

At the outset, no medical provider has opined that plaintiff would need to miss work a certain amount of days per month, nor does the record support such a contention. To the contrary, a December, 2012, functional capacity evaluation indicated that plaintiff could perform sedentary work based on an eight-hour day, 40 hours per week, with certain postural limitations. (Tr. 724) The Court is not persuaded by plaintiff's reliance on Hayden v. Comm'r of Soc. Sec., 338 F. Supp. 3d 129, 138 (W.D.N.Y. 2018), because the record in that case contained an opinion explicitly stating that the plaintiff would require absences from work, which the ALJ failed to properly evaluate. See id. ("had the ALJ accepted Dr. Shamsi's opinion that Plaintiff could be expected to have two absences per month, she would not meet the demands of the occupations listed by the vocational expert at the hearing. As such, remand of this matter for further administrative proceedings, wherein the ALJ can appropriately analyze and weigh Dr. Shamsi's opinion, is necessary.").

Contrary to plaintiff's assertion that the ALJ did not consider the "varied and extensive treatments she had received," see Dkt. No. 12-1 at 22, the ALJ expressly considered and noted plaintiff's need for multiple treatment modalities, including her physical therapy, massage therapy, chiropractic care, and injections. (Tr. 22-23)

Finally, this Court has found that the need for a medical visit does not necessarily equate to missing an entire day of work and that the need for multiple medical visits does not compel disabling absenteeism. See Robbins v. Saul, No. 18-CV-6592, 2020 WL 1445854, at *4 (W.D.N.Y. Mar. 25, 2020) (rejecting plaintiff's assertion that 45 medical

events over a 21-month period prevented her from maintaining regular employment and collecting cases finding that a claimant can seek treatment during part of a workday or during non-work hours). Nor do plaintiff's treatment notes indicate that her appointments lasted for a length of time requiring plaintiff to miss a full workday. *See Ann C. v. Comm'r of Soc. Sec.*, No. 18-CV-1291, 2021 WL 492113, at *5 (W.D.N.Y. Feb. 10, 2021) ("Plaintiff, however, fails to cite any evidence that her appointments would have required her to miss an entire day of work. As the Commissioner notes and other courts have recognized in rejecting similar arguments, it is possible that such appointments could have been completed during non-work hours.").

The ALJ therefore did not err in failing to include a limitation for a fixed number of absences because the record does not support the need for such a limitation. *See, e.g., Swanson v. Comm'r of Soc. Sec.*, No. 18-CV-00870, 2020 WL 362928, at *5 (W.D.N.Y. Jan. 21, 2020) ("[T]here is no medical opinion or other evidence in the record to suggest that Plaintiff's limitations would cause Plaintiff to be off-task 15 percent or more of the day. As such, Plaintiff's argument is wholly speculative.").

### C. Opinion Evidence

Plaintiff argues that the ALJ erred by considering pain specialist Dr. Bernard Beaupin's opinion restricting plaintiff to sedentary work while ignoring his functional opinions on her ability to sit, stand, and walk. (Dkt. No. 21-1 at 26-28)

Medical opinions are "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical and mental restrictions." 20 C.F.R. § 404.1527(a)(1). Here, the notations cited to by

plaintiff were not medical opinions or functional assessments, but Dr. Beaupin's recitation of plaintiff's subjective reports of how much she could sit, stand, walk, lift, and sleep at the beginning of each treatment visit. (Tr. 1062, 1069, 1073, 1078, 1083, 1093, 1103, 1118, see, e.g. Tr. 1123 ["standing: note change from last time she specified that standing in one spot is 5-10 min however walking is up to one hour;" "sleeping: 4-6 consecutive"]) Because these notations merely documented plaintiff's subjective complaints at each visit, this evidence did not constitute a medical opinion requiring an opinion analysis by the ALJ. *See Polynice v. Colvin*, 576 Fed. Appx. 28, 31 (2d Cir. 2014) ("Much of what Polynice labels 'medical opinion' was no more than a doctor's recording of Polynice's own reports of pain."); *McMorris v. Comm'r of Soc. Sec.*, No. 18-CV-6118, 2019 WL 2897123, at *5 (W.D.N.Y. June 26, 2019) ("This recitation of Plaintiff's subjective complaints was not an opinion that the ALJ was required to evaluate, and even if it was, the ALJ's decision extensively discusses the reasons he determined Plaintiff was capable of performing light work."); *Cripps v. Colvin*, No. 15-CV-6697, 2016 WL 4425042, at *5 (W.D.N.Y. Aug. 21, 2016) ("[The claimant's] suggestion that the ALJ ignored specific opinions from Dr. Ferris regarding his ability to stand, walk, and sit for extended periods of time does not accurately characterize the record. Rather, almost all of what [the claimant] labels as medical opinion is Dr. Ferris' recording of his subjective complaints.") Accordingly, the ALJ was not required to analyze these notations as a medical opinion the Court rejects plaintiff's challenge on this basis.

The Court finds that the ALJ's decision is free of legal error and supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is denied and the Commissioner's motion for judgment on the pleadings (Dkt. No. 17) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:  July 7, 2021
Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge